# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
February 25, 2010

No. 08-51194

Charles R. Fulbruge III
Clerk

MAVERICK RECORDING COMPANY, A California Joint Venture; UMG RECORDINGS INC, A Delaware Corporation; ARISTA RECORDS LLC, A Delaware Limited Liability Company; WARNER BROTHERS RECORDS INC, A Delaware Corporation; SONY BMG MUSIC ENTERTAINMENT, A Delaware General Partnership

Plaintiffs – Appellees-Cross-Appellants

v.

WHITNEY HARPER

Defendant – Appellant-Cross-Appellee

---

Appeals from the United States District Court
for the Western District of Texas

---

Before DAVIS, CLEMENT, and ELROD, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

Ruling on cross-motions for summary judgment, the district court found that appellant Whitney Harper infringed copyrights held by a consortium of record companies in 37 sound recordings. It also found that whether Harper was an "innocent infringer" under 17 U.S.C. § 504(c)(2) was a question for the jury. On Plaintiffs' motion, the court entered a final judgment against Harper in the amount of $200 per infringed work, the minimum amount that could be awarded for innocent infringement. Harper appealed and Plaintiffs cross-appealed. We

No. 08-51194

affirm the district court's finding of copyright infringement but reverse its conclusion that Harper could press the "innocent infringer" defense.

## FACTS AND PROCEEDINGS

In June 2004, MediaSentry, a company retained by Plaintiffs to investigate the infringement of their copyrights over the Internet, identified an individual using a file-sharing program to share 544 digital audio files with other users of a peer-to-peer network. The shared audio files included a number of Plaintiffs' copyrighted sound recordings. By tracing the user's Internet protocol address, Plaintiffs ultimately identified Harper as the individual responsible for the file sharing.

To ensure that each of the 544 audio files was a downloadable file, MediaSentry initiated a download of the entire group. The company captured screen shots showing all of the files that Harper was sharing. It also captured the metadata associated with each file, which included the name of the artist and song. This information allowed Plaintiffs to identify those sound recordings on which they held a copyright. MediaSentry fully downloaded six of the audio files from Harper's "shared folder." Subsequent discovery indicated that Harper had downloaded all of the files from the Internet to the computer without paying for them, and that she had not copied, or "ripped," any of the songs from compact discs that she had bought legally.

During discovery, Plaintiffs examined Harper's computer. The examination showed that its operating system had been reinstalled in 2005. As a result, most of the files present on the computer in 2004, when MediaSentry performed its investigation, had been overwritten. The forensic examination did show that three file-sharing programs had been installed and used on the computer, including a program known as LimeWire, which had been used after the operating system was reinstalled. It also revealed a new cache of approximately 700 recordings downloaded since the reinstallation. Fifteen of the

copyrights that Plaintiffs' second amended complaint alleged that Harper infringed came from this newly discovered cache.

In August 2008, the district court granted Plaintiffs' motion for summary judgment on their copyright claims for 37 audio files. By agreement of the parties, the court also entered an injunction against Harper.

The district court denied Plaintiffs' request for statutory damages. Plaintiffs had requested the minimum damages of $750 per infringed work set forth in § 504(c)(1). Harper asserted that her infringement was "innocent" under § 504(c)(2), which provides that "where the infringer sustains the burden of proving . . . that [she] was not aware and had no reason to believe that . . . her acts constituted an infringement of copyright, the court in its discretion may reduce the award of statutory damages to a sum of not less than $200." Harper averred that she thought her actions were equivalent to listening to an Internet radio station. The district court found that whether her infringement was "innocent" presented a disputed issue of material fact.

The district court denied each party's motion for reconsideration. In doing so, it clarified its finding that Harper infringed Plaintiffs' exclusive rights to both reproduce and distribute the 37 songs on which they held a copyright.

Reserving the right to appeal the district court's legal conclusion on the innocent infringer issue if Harper appealed, Plaintiffs moved for entry of judgment in the amount of $200 for each infringed work—the minimum amount due from an innocent infringer. The court granted Plaintiffs' motion and entered judgment against Harper. Harper appealed, and Plaintiffs cross-appealed.

Harper argues that, for 31 of the 37 recordings, there was insufficient evidence of infringement because the audio files were not found on her computer. She also contends that she did not infringe Plaintiffs' copyrights by "making available" the audio files and that the Copyright Act's statutory damages scheme

No. 08-51194

violates due process.  Plaintiffs argue that the district court erred by failing to rule out the innocent infringer defense as a matter of law.

## STANDARD OF REVIEW

We review a grant of summary judgment *de novo* and apply the same legal standard as the district court.  *Miller v. Gorski Wladyslaw Estate*, 547 F.3d 273, 277 (5th Cir. 2008).  Summary judgment should be rendered if the record demonstrates that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  "[A]ll facts and evidence must be taken in the light most favorable to the non-movant."  *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 387 (5th Cir. 2007).

## DISCUSSION

### A.    Sufficiency of the Evidence

Harper argues that Plaintiffs did not present sufficient evidence for the district court to find that 31 of the 37[1] audio files at issue existed on her computer.  She does not contest the existence of the six audio files that MediaSentry downloaded in full over the peer-to-peer file-sharing network in 2004.  She also cannot contest the existence of the 15 audio files that were part of the cache of approximately 700 songs discovered on Harper's hard drive in 2008.  The issue, then, is whether Plaintiffs made an undisputed showing that Harper had downloaded the remaining 16 audio files.

Harper's argument relies on the computer forensic expert's inability to recover complete copies of the 16 contested audio files when the expert searched her computer's hard drive in 2008.  That inability was due to the 2005 reinstallation of the computer's operating system, which overwrote most of the

---

[1] In her brief, Harper asserts that the evidence was insufficient to show the existence of 33 out of 39 audio files.  That sum reflects a miscalculation.  After the district court's entry of judgment as to 37 audio files, six of which Harper admits were on her computer, she must be challenging the sufficiency of the evidence on 31 audio files.

4

audio files present in 2004. Harper asserts that the 2008 forensic evidence is inconclusive and that a jury could find that the file remnants discovered in the 2008 examination were something other than downloaded audio files.

Harper's argument ignores the voluminous and undisputed evidence that she downloaded and shared the 16 contested audio files. MediaSentry's screen shots of Harper's "shared folder" indicate that she was sharing the contested audio files from her computer in 2004. MediaSentry also initiated downloads of the audio files to verify their existence and recovered metadata from which it could identify the artist and song title of each file.

Harper submitted no evidence that calls into question Plaintiffs' showing that she had downloaded the audio files. In her deposition, she did not deny that she had downloaded them. She also testified that she had not copied any of the recordings to her computer from compact discs that she purchased, and she acknowledged using a peer-to-peer file-sharing network and stated that she recognized "some of the songs . . . as music I listened to and may have downloaded to the computer."

The uncontroverted evidence is more than sufficient to compel a finding that Harper had downloaded the files: there was no evidence from which a fact-finder could draw a reasonable inference that Harper had *not* downloaded them or that they were something other than audio files. Harper "cannot defeat a motion for summary judgment merely by claiming some metaphysical doubt as to the material facts." *Thibodeaux v. Vamos Oil & Gas Co.*, 487 F.3d 288, 295 (5th Cir. 2007) (quotation omitted). The district court properly rejected Harper's argument that the evidence of infringement was insufficient.

## B.    Copyright Infringement

Section 106 of the Copyright Act grants copyright owners the exclusive right "to do and to authorize," *inter alia*, the reproduction of "the copyrighted work in copies or phonorecords," the preparation of "derivative works based upon

No. 08-51194

the copyrighted work," and the distribution of "copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending." 17 U.S.C. § 106. Plaintiffs' second amended complaint contains one count, for copyright infringement. Plaintiffs alleged that Harper had violated their copyrights in two ways: first, by reproducing the copyrighted audio files, and second, by making them available to others, which Plaintiffs argue is tantamount to "distribution." The district court found that the undisputed evidence showed Harper had done both.

Harper argues that making audio files available to others by placing them in a "shared folder" accessible by users of a peer-to-peer file-sharing network does not constitute "distribut[ion]" under § 106(3). *Cf. Elektra Entm't Group, Inc. v. Barker*, 551 F. Supp. 2d 234, 239-47 (S.D.N.Y. 2008) (collecting cases in which courts have considered but not embraced the "making available" theory of distribution). We need not address the "making available" argument at this time, however, because Harper did not appeal the district court's finding that she had infringed Plaintiffs' copyrights by downloading, and hence reproducing, the audio files. Because Plaintiffs only seek minimum statutory damages, the question before the court is whether Harper's actions violated the Copyright Act, not how or to what extent they violated it. *See* 17 U.S.C. § 504(c)(1) (allowing copyright holders to elect "to recover . . . an award of statutory damages for all infringements involved in the action, with respect to any one work"). Harper's failure to contest the alternative, independent ground on which the district court found her liable for copyright infringement renders superfluous her argument against the "making available" theory. Even if the court agreed that Harper did not "distribute" the recordings under § 106(3) by making them available to others, the underlying finding of copyright infringement predicated on reproduction would remain.

6

No. 08-51194

The district court's unchallenged ruling that Harper infringed Plaintiffs' copyrights by downloading the audio files is supported by case law in this and other circuits. In *Alcatel USA, Inc. v. DGI Technologies, Inc.*, this court held that the distribution of a microprocessor card that made copies of an operating system by downloading it caused users to violate the plaintiff's "exclusive right to reproduce its software." 166 F.3d 772, 791 (5th Cir. 1999); *see* § 106(1). In *BMG Music v. Gonzalez*, the Seventh Circuit held that a defendant infringed copyrights by downloading music through a file-sharing network. 430 F.3d 888 (7th Cir. 2005), *cert. denied*, 547 U.S. 1130 (2006). *Gonzalez* explained that the foundation of the Supreme Court's holding in *MGM Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005), "is a belief that people who post or download music files are primary infringers." 430 F.3d at 889; *see also In re Aimster Copyright Litig.*, 334 F.3d 643, 645 (7th Cir. 2003) ("swapping" music files over the Internet "infringes copyright"); *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1014 (9th Cir. 2001) ("Napster users who download files containing copyrighted music violate plaintiffs' reproduction rights.").

Harper infringed Plaintiffs' exclusive right to reproduce their copyrighted works by downloading the 37 audio files to her computer without authorization. The district court correctly granted summary judgment on the issue of infringement.

## C.    Due Process

Harper contends that the statutory scheme of damages for copyright violations outlined in § 504, as applied to her, violates due process by imposing grossly excessive damages. She argues that, at the time of the infringement, she was young and did not know that what she was doing was unlawful, and that fining her several hundred dollars per song for illegal downloading does not comport with substantive due process.

Harper, however, waived her constitutional challenge by failing to raise it below in a manner that would allow the district court to rule on it. "It is well settled in this Circuit that the scope of appellate review on a summary judgment order is limited to matters presented to the district court." *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 339 (5th Cir. 2005). "If a party wishes to preserve an argument for appeal," it "'must press and not merely intimate the argument during the proceedings before the district court.'" *Id.* at 340 (quoting *New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 n.4 (5th Cir. 1995)). "If an argument is not raised to such a degree that the district court has an opportunity to rule on it, we will not address it on appeal." *FDIC v. Mijalis*, 15 F.3d 1314, 1327 (5th Cir. 1994).

In her opposition to Plaintiffs' motion for summary judgment, Harper stated that she had notified the district court of her intent to challenge the constitutionality of the Copyright Act. She then presented the whole of her constitutional argument: "Whitney Harper believes that the copyright law, as being applied by the plaintiff is unfair and over-reaching and exacts an unreasonable punishment." Harper did not cite any provision of the Constitution or explain why the punishment was so unreasonable that it violated due process. The district court did not rule on her conclusory and unsupported assertion. It was not remiss in failing to do so. The point was simply not pressed in Harper's brief in a cognizable fashion. Instead, it was "presented in a cursory manner" insufficient to preserve it for appeal. *In re Espino*, 806 F.2d 1001, 1002 (11th Cir. 1986).

## D.    "Innocent Infringer" Defense

In denying Plaintiffs' motion for summary judgment as to damages, the district court held that there was a genuine issue of material fact as to whether Harper was an innocent infringer. The innocent infringer defense gives the district court discretion to reduce the minimum statutory damages from $750 to

$200 per infringed work if it finds that the infringer "was not aware and had no reason to believe that his or her acts constituted an infringement of copyright." 17 U.S.C. § 504(c)(2). Harper averred in an affidavit that she did not understand the nature of file-sharing programs and that she believed that listening to music from file-sharing networks was akin to listening to a non-infringing Internet radio station. The district court ruled that this assertion created a triable issue as to whether Harper's infringement was "innocent" under § 504(c)(2).

Assuming *arguendo* that Harper made a prima facie case that she was an innocent infringer, we hold that the defense was unavailable to her as a matter of law. The innocent infringer defense is limited by 17 U.S.C. § 402: with one exception not relevant here, when a proper copyright notice "appears on the published . . . phonorecords to which a defendant . . . had access, then no weight shall be given to such a defendant's interposition of a defense based on innocent infringement in mitigation of actual or statutory damages." *Id.* § 402(d).

The district court acknowledged that Plaintiffs provided proper notice on each of the published phonorecords from which the audio files were taken. It found, however, that regardless of Harper's access to the published phonorecords, such access would not necessarily put her on notice of the copyrights: "a question remains as to whether Defendant knew the warnings on compact discs were applicable in this [file-sharing network] setting." The court discounted the argument "that one need only have access to some CD and see that the recording is subject to copyright" for § 402(d) to bar the innocent infringer defense, because knowledge that some CDs are copyrighted does "little to establish that, as a matter of law . . . an individual knew that she was accessing copyright material from an entity that did not have permission to distribute such material." In her brief opposing summary judgment and brief on appeal, and at oral argument, rather than contest the fact of "access," Harper

contended only that she was too young and naive to understand that the copyrights on published music applied to downloaded music.

These arguments are insufficient to defeat the interposition of the § 402(d) limitation on the innocent infringer defense. Harper's reliance on her own understanding of copyright law—or lack thereof—is irrelevant in the context of § 402(d). The plain language of the statute shows that the infringer's knowledge or intent does not affect its application.[2] Lack of legal sophistication cannot overcome a properly asserted § 402(d) limitation to the innocent infringer defense.

This understanding is supported by the historical structure of the copyright law. What is now § 402(d) was amended as part of the Berne Convention Implementation Act ("BCIA"), Pub. L. No. 100-568, 102 Stat. 2853 (1988). Before the Berne Convention was adopted, publishers ran the risk of placing their work into the public domain by failing to include a notice of copyright. "Under the BCIA," however, "notice is no longer required at publication." 2-7 MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT § 7.02(C)(3) (2009). But the BCIA, in part through § 402(d), "preserves an incentive for use of the same type of copyright notice." *Id.* That incentive is the bar to the innocent infringer defense. Under this scheme, it would make no sense for a copyright defendant's subjective intent to erode the working of § 402(d), which gives publishers the option to trade the extra burden of providing copyright notice for absolute protection against the innocent infringer defense. Harper cannot rely on her purported legal naivety to defeat the § 402(d) bar to her innocent infringer defense.

In short, the district court found a genuine issue of fact as to whether Harper intended to infringe Plaintiffs' copyrights, but that issue was not

---

[2] And copyright infringement itself has no *mens rea* element. 2-7 MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT § 7.02 & n.26.1 (2009).

material: § 402(d) forecloses, as a matter of law, Harper's innocent infringer defense. Because the defense does not apply, Plaintiffs are entitled to statutory damages. And because Plaintiffs requested the minimum statutory damages under § 504(c)(1), Harper's culpability is not an issue and there are no issues left for trial. Plaintiffs must be awarded statutory damages of $750 per infringed work.

## CONCLUSION

The district court correctly found that Harper infringed Plaintiffs' copyrights by downloading the 37 audio files at issue. It erred, though, by allowing Harper's innocent infringer defense to survive summary judgment. We AFFIRM the district court's finding of copyright liability, REVERSE its finding that the innocent infringer defense presented an issue for trial, and REMAND for further proceedings consistent with this opinion.